

FILED

February 2, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 12:11 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| JOANN LONG, | ) | Docket No.: 2015-03-0285 |
| **Employee,** | ) | |
| v. | ) | State File Number: 894-2015 |
| SOUTHEAST EYE SPECIALISTS | ) | |
| **Employer.** | ) | Judge Pamela B. Johnson |

---

## EXPEDITED HEARING ORDER
## DENYING MEDICAL AND TEMPORARY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Joann Long, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issues are: (1) whether the Employer, SouthEast Eye Specialists (SES), is obligated to pay for any past medical expenses and/or mileage expenses; (2) whether Ms. Long is entitled to additional medical care as recommended by a physician; (3) whether Ms. Long is entitled to an evaluation by another physician; and (4) whether Ms. Long is entitled to any past or future temporary total disability benefits, and if so, in what amount. For the reasons set forth below, the Court finds that Ms. Long demonstrated that she is not likely to prevail at a hearing on the merits on the central legal issues. Accordingly, her request for temporary disability and medical benefits is denied.[1]

### History of Claim

Ms. Long is a forty-five-year-old resident of Blount County, Tennessee. SES employed Ms. Long as a Certified Ophthalmic Assistant. On December 24, 2015, Ms. Long assisted a patient in a wheelchair to his vehicle and turned to go back into the building when she slipped and fell on wet concrete.

Following her fall, Ms. Long sought immediate treatment at Family Care Specialists and saw Dr. McMichael. Dr. McMichael diagnosed Ms. Long with a probable hamstring strain, placed her on crutches, and instructed her to return as needed.

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

Within five days, Ms. Long developed bruising about her right leg and increased pain. She saw Dr. Charles Robinson on January 6, 2015, who ordered a right thigh MRI and referred her to an orthopedic specialist. (Ex. 2, 1/21/15 Office Visit, HPI.)

The right thigh MRI scan demonstrated complete avulsion of the right hamstring tendons from their ischial tuberosity attachment site with retraction of the hamstring tendons into the proximal thigh. The MRI further indicated a large complex fluid collection, with the appearance of a large post-traumatic hematoma. (Ex. 1, MRI Report 1/6/15.)

SES provided Ms. Long a panel of physicians, and she selected Dr. Michael Holt on January 13, 2015. (Ex. 5, Form C42, dated 1/13/15.) Dr. Holt ultimately refused to treat Ms. Long, and SES provided her a new panel of physicians. (Ex. 5, Form C42, dated 1/20/15.) Ms. Long testified that she attempted to call the doctors listed on the panel to determine if the doctors were familiar with the rarity of her injury. She testified she selected Dr. William Hovis from the panel on January 20, 2015, due to his years of experience.

Dr. Hovis evaluated Ms. Long on January 21, 2015. Ms. Long reported, "[S]he was reaching for the automatic door opener button and slipped on wet pavement. Her right leg went out in front of her, causing her to fall to the ground landing with her left leg behind." (Ex. 2, 1/21/15 Office Visit.) Dr. Hovis reviewed the right thigh MRI and x-rays, and performed a physical examination. *Id.* Dr. Hovis noted a "complete disruption femoral origin medial hamstring," and discussed both surgical and nonsurgical treatment options with Ms. Long. *Id.* Dr. Hovis further noted:

> Considering her apparent activity level (she is significantly obese), age and time since injury (almost one month)[,] I have advised her that I would not recommend surgical intervention. I feel the risk to benefit ratio is not appropriate. The difficulty in obtaining any meaningful functional improvement from hamstring rupture without avulsion fracture fragments for stabilization reviewed.

*Id.* Due to Ms. Long's interest in surgical repair, Dr. Hovis recommended a second opinion from another orthopedic surgeon. *Id.* Dr. Hovis recommended that Ms. Long remain off work until her next visit. *Id.*

Ms. Long saw Dr. Michael Casey of Tennessee Orthopedic Clinic on February 11, 2015, for a second opinion. (Ex. 1, 02/11/15 Office Visit.) Dr. Casey reviewed the MRI and noted "involvement of all three of the tendons and there are at least 6 to 7 cm retracted." *Id.* Ms. Long reported, "She has been ambulating with either crutches or walker[.] . . . She states the swelling and bruising has subsided to some degree, but still complaining of significant discomfort and pain, and she is unable to fully extend her leg

2

for weightbearing." *Id.* Dr. Casey diagnosed hamstring avulsion with significant retraction. *Id.* Dr. Casey discussed the "surgical repair of the hamstring tendons in regards to the complexity." *Id.* Dr. Casey recommended physical therapy and follow up "in a couple of weeks to see how she is progressing from that. I will have them discuss as to how [she] want[s] to proceed treatment wise and we will dictate treatment accordingly at that point." *Id.* In a WorkLink Physician's Report, Dr. Casey noted both referral for physical therapy and referral for surgery. (Ex. 1, 02/11/15 WorkLink Report.) Ms. Long signed a "Surgery/Procedure Consent Form" for a "right hamstring avulsion repair" on February 11, 2015. (Ex. 1, 02/11/15 Surgery/ Procedure Consent Form.) Ms. Long testified Dr. Casey scheduled surgery for March 4, 2015.

Ms. Long testified that she contacted SES's carrier and requested that Dr. Casey become her authorized treating physician. SES's carrier did not authorize Ms. Long to treat with Dr. Casey beyond the second opinion evaluation. Ms. Long testified that SES's carrier told her she had to go back to Dr. Hovis for treatment.

Following the second opinion, Ms. Long returned to see Dr. Hovis on February 23, 2015. (Ex. 2, 02/23/2015 Office Visit.) Dr. Hovis noted that she saw Dr. Casey, who recommended surgery. *Id.* She reported, "pain to be constant, burning, sharp, aching and cramping with additional symptoms [to] include stiffness, weakness, instability, fatigue, ROM limitation, difficulty walking and radiation of pain on the involved side. The pain wakes the patient from sleep." *Id.* After Dr. Hovis advised of the risks of surgery, Ms. Long chose nonsurgical management. *Id.* Dr. Hovis recommended therapy and a "rehab program." *Id.* On March 23, 2015, Dr. Hovis recommended a continued gradual progressive exercise program and ordered physical therapy. *Id.* Dr. Hovis further recommended that Ms. Long remain off work until her next office visit. *Id.*

Ms. Long testified she selected nonsurgical treatment because she was scared by what Dr. Hovis told her regarding a possible retear.

On April 20, 2015, Dr. Hovis evaluated Ms. Long for "pain spreading down [her] leg with some numbness and tingling in [her] leg" and discomfort while sitting. (Ex. 2, 04/20/2015 Office Visit.) She also reported increasing inflammation spreading down into her knee. *Id.* Ms. Long requested a wheelchair "so [she] could live a more normal life." *Id.* Dr. Hovis denied her request for a wheelchair and stressed the "importance of her vigorous, active, legitimate, and enthusiastic participation in her rehab program." *Id.* Dr. Hovis further discussed a healthy diet and encouraged weight loss. *Id.* Dr. Hovis continued Ms. Long's off work status until her next office visit. *Id.*

Subsequently, Ms. Long sought unauthorized medical care from Dr. Damon H. Petty at Tennessee Orthopaedic Alliance. (Ex. 3, 05/07/2015 Office Visit.) Dr. Petty evaluated Ms. Long on May 7, 2015, who reported difficulties in activities of daily living, including problems ascending and descending stairs, getting in and out of vehicles. She

3

advised "she [was] desperate to have something done for her leg." *Id.* Dr. Petty indicated:

> Conservative treatments for this injury will likely not bode for long-term satisfaction for her. Her hamstring proximal origin has been completely avulsed and surgical intervention is indicated based on both clinical experience and current literature. She has made little to no improvement through her rehabilitation efforts. Her quality of life is diminished and she is unable to even perform ADLs sufficiently. She at this point has a low level of function from this right leg. Delayed surgical intervention for this injury can be performed satisfactorily with a good prognosis but there is still some level of risk in comparison to an acute repair[.] . . .
>
> This injury is directly related to her fall at work and needs to be addressed surgically as soon as possible as any further delay in treatment for this will decrease her long-term satisfaction and prognosis for this injury.

*Id.*

Ms. Long wrote a letter to "Rena," the office manager at SES, following her visit with Dr. Petty to advise of the decisions she made regarding her progress and care received. (Ex. 6.) In her letter, she advised she researched her injury "in an effort to find a doctor with the experience to handle [her] care." *Id.* She outlined her medical care to date and her continued difficulties with activities of daily living. *Id.* She further described her belief that Dr. Hovis did not listen to her concerns. She advised, "I am not getting any better, at this point, I am getting WORSE. I feel I have no other recourse but to seek proper care on my own." *Id.* She advised "Rena" of her consultation with Dr. Petty and her decision to proceed with surgical repair by Dr. Petty. *Id.* She reiterated, "I feel this is the ONLY way I can completely recover and be able to come back to work full time and be a fully functioning employee." *Id.*

By letter dated May 20, 2015, Ms. Long, through counsel, advised SES's counsel that she believed that she did not receive proper medical care from Dr. Hovis. (Ex. 7.) She additionally asserted that, despite Dr. Casey's recommendation for surgery, Dr. Hovis refused. *Id.* She notified SES's counsel that she sought treatment at her own expense with Dr. Petty, who scheduled surgery for May 22, 2015. *Id.* Ms. Long requested that SES's carrier cover the cost of the surgery and follow-up care with Dr. Petty. *Id.* She also requested SES designate Dr. Petty as the authorized treating physician moving forward. *Id.*

On May 22, 2015, Dr. Petty performed a right proximal hamstring repair at Centennial Surgery Center. (Ex. 3, 05/22/2015 Operative Note.) Post-operatively, Dr. Petty recommended physical therapy. (*See generally* Ex. 5.)

4

Ms. Long was a "no call/ no show" for appointments scheduled with Dr. Hovis on May 28, 2015, and June 4, 2015. SES filed a Notice of Controversy, Form C-27, on June 17, 2015. (Ex. 4.) SES identified the matters in dispute as follows:

> Pursuant to TCA 50-6-204(8) benefits are suspended because the employee has refused to comply with and accept medical services provided by the employer through the authorized treating physician, Dr. Hovis. The employee was a no call/ no show for her appointment with her authorized treating physician on June 4, 2015.

*Id.*

On August 4, 2015, Ms. Long asked Dr. Petty to address statements raised in the "employer's positions (sic) statement." Dr. Petty responded to the statement "Dr. Hovis advised that due to her activity level and obesity he did not recommend surgical intervention," stating:

> Dr. Hovis made an error anatomically. When he referred to her proximal hamstring origin as being the femoral origin. There is in fact, no femoral origin of these muscles. They originate from the pelvis, specifically the ischial tuberosity, not the femur. These muscles progress down the back of the leg and become tendons which attach to the tibia so these structures do not attach to the femur anywhere along their course at the upper or lower ends. I believe, however, that Dr. Hovis was referring to the proximal origin of the hamstrings from the ischium. Clearly this is where her injury occurred and it was documented clearly on the MRI as well as by physical exam and history. Next, her body habitus has nothing to do with whether or not this muscle should have been repaired. Additionally her activity level was very high and vigorous and the patient clearly described the symptoms of weakness especially walking up stairs and inclines and the type of pain that she was having as a result of this injury and surgical intervention was clearly indicated by knowledgeable surgeons.

(Ex. 3, 08/04/2015 Office Visit.)

Dr. Petty recommended Ms. Long "stay out of work for 4 more weeks" following surgery. (Ex. 5, 06/02/2015 Office Visit.) Dr. Petty did not address work status in subsequent reports submitted into evidence. (Ex. 5 generally.) Ms. Long testified, however, she was "taken off work" by Dr. Petty beginning June 2015 until October 22, 2015, wherein Dr. Petty released her to return to work when she felt comfortable to do so in the six to twelve weeks following the appointment.

5

Ms. Long filed a Petition for Benefit Determination (PBD) seeking reinstatement of medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN). Ms. Long filed a Request for Expedited Hearing, and this Court heard the matter on December 4, 2015.

At the Expedited Hearing, Ms. Long argued she plateaued under Dr. Hovis' care. She felt Dr. Hovis dismissed her concerns and failed to provide proper care, so she sought care on her own with Dr. Petty, who performed a successful surgery on May 22, 2015. Dr. Petty opined Dr. Hovis erred and was not knowledgeable on her condition. Ms. Long seeks temporary disability benefits from June 17, 2015, the date SES suspended her benefits, to the present, in the amount of $10,052.88. Ms. Long further seeks reimbursement of her medical expenses incurred with Dr. Petty and her out-of-pocket expenses and mileage. She also asks this Court name Dr. Petty as the authorized treating physician.

SES countered that Ms. Long made a unilateral decision to seek medical care and incur medical expenses outside the Workers' Compensation Law. From the beginning, she sought to dictate her care and contacted the medical providers to question their experience. SES provided her a proper panel, and she selected Dr. Hovis as her authorized treating physician. SES provided her a second opinion with Dr. Casey, and such physician does not become the authorized treating physician pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(C). Ms. Long returned to Dr. Hovis, advised him she did not desire to pursue surgery, and began physical therapy. Ms. Long did not advise SES or its carrier of her dissatisfaction with Dr. Hovis' care before she sought treatment with Dr. Petty. She abandoned her care with Dr. Hovis following her appointment with him on April 20, 2015. She was a "no call/ no show" to her appointments with Dr. Hovis on May 28, 2015, and June 4, 2015. SES properly suspended her benefits. SES avers Ms. Long is not entitled to payment of medical expenses incurred with Dr. Petty or temporary disability benefits while noncompliant with her treatment.

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27,

6

2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Entitlement to Medical Expenses Incurred with Dr. Petty*

The Workers' Compensation Law provides the employee the opportunity to select "the treating physician" from the employer's designated panel of "physicians, surgeons, chiropractors or specialty practice groups." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2015); *Scott,* 2015 TN. Wrk. Comp. App. Bd. LEXIS 24, at *7. "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(13)(E) (2015); *Id.* Neither of these provisions preconditions the "treating physician" designation, or the application of the presumption of correctness, on a court's perception of whether the treatment provided at any given medical appointment was appropriate or adequate. *Id.*

In *Scott,* the Workers' Compensation Appeals Board noted, "Tennessee courts have long held that the employer in a workers' compensation case generally has the right to control medical treatment, assuming that the employer has complied with the requirements of Tennessee Code Annotated section 50-6-204 (2015)." *Id.* at *7. Once an employer offers the employee a panel of physicians in accordance with the statute, then the selected physician is designated the "treating physician[.]" *Id.* at *8. The assessment by a court of the appropriateness of medical treatment offered at a medical appointment with an authorized treating physician adds a purely subjective element to the analysis that finds no support in the language of the statute. *Id.* Judges are not well-suited to second-guess a medical expert's treatment, recommendations, and/or diagnoses absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record. *Id.*

In this case, SES offered Ms. Long a panel of physicians in accordance with the statute, and she selected Dr. Hovis as her authorized treating physician. As the authorized treating physician, Dr. Hovis' treatment is "presumed to be medically necessary for treatment of the injured employee." Tenn. Code Ann. § 50-6-204(a)(3)(H) (2015). Given the conflicting medical evidence, this Court is thus taxed with assessing the appropriateness of medical treatment offered by Dr. Hovis.

Dr. Hovis stated:

Considering her apparent activity level (she is significantly obese, age and time since injury (almost one month)[,] I have advised her that I would not recommend surgical intervention. I feel the risk to benefit ratio is not

7

appropriate. The difficulty in obtaining any meaningful functional improvement from hamstring rupture without avulsion fracture fragments for stabilization reviewed.

(Ex. 2, 01/21/2015 Office Visit.) In light of Ms. Long's expressed interest in considering surgical repair, Dr. Hovis recommended a second opinion.

Dr. Casey conducted the second opinion and stated:

I have discussed with her and the husband about surgical repair of the hamstring tendons in regards to the complexity of this. The potential neurovascular compromise of the sciatic nerve, the potential pain with sitting, and potential for rerupture. I have also gone through very clearly the long and complex postop rehab, which we [sic] require bent knee in a brace and on crutches for six to eight weeks. I have told her it would be a very long recovery process if it even could be repaired and I have made it very clear to them that the tendon may be retracted to such a degree that it cannot even be repaired. Initially I will start her with some physical therapy which she has not had, I will see her back in a couple of weeks to see how she is progressing from that. I will have them discuss as to how they want to proceed treatment wise and we will dictate treatment accordingly at that point.

(Ex. 1, 02/11/2015 Office Visit.)

Following the second opinion evaluation, Ms. Long returned to Dr. Hovis and again discussed surgery. "After discussion and answering all questions," Ms. Long related that she did "not desire surgical repair of her medial hamstrings." (Ex. 2, 02/23/2015 Office Visit.) Ms. Long commenced physical therapy as recommended by Dr. Hovis.

Dr. Petty addressed Dr. Hovis' recommendation against surgical intervention, stating:

Dr. Hovis made an error anatomically. When he referred to her proximal hamstring origin as being the femoral origin. There is in fact, no femoral origin of these muscles. They originate from the pelvis, specifically the ischial tuberosity, not the femur. These muscles progress down the back of the leg and become tendons which attach to the tibia so these structures do not attach to the femur anywhere along their course at the upper or lower ends. I believe, however, that Dr. Hovis was referring to the proximal origin of the hamstrings from the ischium. Clearly this is where her injury occurred and it was documented clearly on the MRI as well as by physical

8

exam and history. Next, her body habitus has nothing to do with whether or not this muscle should have been repaired. Additionally her activity level was very high and vigorous and the patient clearly described the symptoms of weakness especially walking up stairs and inclines and the type of pain that she was having as a result of this injury and surgical intervention was clearly indicated by knowledgeable surgeons.

(Ex. 3, 08/04/2015 Office Visit.)

In weighing conflicting medical opinions, "[a] trial court generally has the discretion to choose which expert to accredit when there is a conflict of expert opinions." *Brees v. Escape Day Spa & Salon,* No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, *14 (TN Workers' Comp. App. Bd. March 12, 2015). "In evaluating conflicting expert testimony, a trial court may consider, among other things, 'the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts.'" *Id.* (citing *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991)).

Here, the Court received into evidence the medical records of Drs. Hovis, Casey, and Petty. The parties did not secure the deposition testimony of any of the physicians. The medical records do not set forth the qualifications of the physicians to allow this Court to analyze and weigh their credentials. The information available to each of the physicians is equal and does not provide any guidance to this Court as to whom to give greater weight. While the circumstances of their examinations were different, this factor does not weigh in favor of any one physician. Moreover, the length of time Dr. Hovis and Dr. Petty treated Ms. Long is equivalent as reflected in the medical records introduced. Accordingly, based upon the evidence introduced at the Expedited Hearing, this Court is unable to find that Dr. Hovis' treatment was inappropriate.

Because this Court is unable to determine whether Dr. Hovis' treatment was inappropriate, this Court is unable to determine whether Ms. Long was justified in seeking medical treatment with Dr. Petty on her own. The determination whether the employer is responsible for the employee's choice of a doctor turns on whether the employee was justified under the circumstances in obtaining medical services without authorization from the employer's insurer. *See Pickett v. Chattanooga Convalescent and Nursing Home, Inc.,* 627 S.W.2d 941, 944 (Tenn. 1982). Accordingly, at this time, this Court finds that Ms. Long failed to establish that she is likely to prevail at a hearing of the merits that she is entitled to payment of medical expenses and out-of-pocket expenses incurred, including mileage, for treatment rendered by Dr. Petty.

Dr. Hovis shall remain the authorized treating physician if he agrees to continue to treat Ms. Long. If not, SES shall provide Ms. Long a panel of physicians so she may

select a new authorized treating physician in accordance with Tennessee Code Annotated Section 50-6-204 (2015).

*Entitlement to Temporary Disability Benefits While Seeking Unauthorized Care*

The Workers' Compensation Law provides:

If the injured employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medicals services that the employer is required to furnish under this chapter, the injured employee's right to compensation shall be suspended and no compensation shall be due and payable while the injured employee continues to refuse.

Tenn. Code Ann. § 50-6-204(d)(8) (2015).

Here, the Court is unable to determine the appropriateness of Dr. Hovis' treatment. Ms. Long did not advise Dr. Hovis that she changed her mind and desired surgical repair. Ms. Long did not return to see Dr. Hovis after changing her mind on surgery. Based upon the evidence presented at the Expedited Hearing, this Court finds that Ms. Long failed to establish that she is likely to prevail at a hearing of the merits that she is entitled to temporary total disability benefits while seeking unauthorized medical treatment with Dr. Petty and refusing to see her authorized treating physician, Dr. Hovis.

Therefore, as a matter of law, Ms. Long has not come forward with sufficient evidence from which this Court concludes that she is likely to prevail at a hearing on the merits. Her requests for payment for unauthorized medical expenses and temporary total disability benefits are denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Long's claim against SouthEast Eye Specialists and its workers' compensation carrier for the requested benefits is denied at this time.

2. This matter is set for an Initial (Scheduling) Hearing on **Tuesday, March 29, 2016,** at **2:00 p.m.** Eastern time.

**ENTERED this the 2nd day of February, 2016.**

Pamela B Johnson

**Judge Pamela B. Johnson**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with Judge Pamela B. Johnson. You must call 865-594-0091 or toll-free at 855-543-5041 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the

11

purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

- EXHIBIT 1: Medical Certification and Records of Tennessee Orthopedic Clinic;
- EXHIBIT 2: Medical Certification and Records of Hovis Orthopedic Clinic;
- EXHIBIT 3: Medical Certification and Records of Tennessee Orthopaedic Alliance;
- EXHIBIT 4: Notice of Controversy, Form C27;
- EXHIBIT 5 (Collective): Panels of Physicians, Forms C42, dated January 13, 2015, and January 20, 2015;
- EXHIBIT 6: Ms. Long's Letter to "Rena"; and
- EXHIBIT 7: Ms. Long's Attorney's Letter to SES's Attorney, dated May 20, 2015.

Technical record:

- Petition for Benefit Determination, filed June 29, 2015;
- Employer's Position Statement, submitted July 28, 2015;
- Dispute Certification Notice, filed August 14, 2015; and
- Request for Expedited Hearing, filed October 13, 2015.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Stipulation of Fact:

The parties stipulate that Ms. Long's average weekly wage is $628.28, resulting in a workers' compensation rate of $418.87 per week.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 2nd day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------------|---------|-----------|-----------------|
| James W. Friauf, Esq. Employee's Counsel | | | X | james@friauflaw.com |
| Byron K. Lindberg, Esq. Employer's Counsel | | | X | blindberg@hallbothsmith.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

14